UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PJL INVESTMENTS LLC AND JEANETTE LOEB, <br><br> Plaintiffs, <br><br> v. <br><br> RICHARD BREEDEN, MADOFF VICTIMS FUND, AND DEPARTMENT OF JUSTICE, <br><br> Defendants. | ECF CASE <br><br> Civil Action No. _____ <br><br> **COMPLAINT** |

Plaintiffs PJL Investments LLC ("PJL") and PJL manager Jeanette Loeb (collectively, the "Plaintiffs"), by and through their undersigned counsel, bring this suit under the Administrative Procedure Act ("APA") against Defendants Richard Breeden (in his official capacity as Special Master administering the Madoff Victims Fund), the Madoff Victims Fund ("MVF"), and the U.S. Department of Justice ("DOJ") (collectively, the "Defendants"), and hereby allege the following on information and belief, except as to the allegations specifically pertaining to Plaintiffs, which are based on actual knowledge:

**NATURE OF THE ACTION**

1. This APA action challenges Defendants' arbitrary and capricious treatment of the approved MVF petitions of Plaintiff Jeanette Loeb, the Jeanette Loeb IRA, and her family members (who possess non-managing membership interests in PJL). Defendants excluded Plaintiffs from equalization payments available to other, similarly situated victims of the Madoff Ponzi scheme.

2. Following the collapse of the Madoff scheme, Defendants recognized two classes of victims: "direct" victims who held accounts directly with a Madoff entity, and "indirect" victims

1

whose money was invested with a Madoff entity through an intermediary (*e.g.*, a hedge fund, feeder fund, or, relevant here, an investment vehicle like an LLC).

3. In September 2022, MVF issued determination letters advising that petitioners holding or sharing allowed Madoff Bankruptcy Estate ("MBE") claims would receive no further MVF payments because DOJ had determined their "reasonably available" recoveries would likely equal or exceed MVF's anticipated final payout

4. That prediction was indefensible at the time and has proved incorrect in practice. As of January 2026, Plaintiffs' updated reconciliation statements show substantial shortfalls below the MVF's 93.71% equalization level. Across Ms. Loeb's personal, IRA, and PJL-related claims, Plaintiffs' shortfall totals approximately $3.7 million.[1]

5. On behalf of these accounts, Ms. Loeb submitted a formal grievance and demand for readjudication on December 28, 2025. She followed up on January 7, 2026, with a demand for a final determination, for production of the administrative record, and to stay the closure of the MVF. Since those submissions she has not received a substantive response to either demand or a final determination reconciling the identified shortfalls.

6. Defendants' reliance on an outdated and unfulfilled "reasonably available recovery" forecast and their improperly disparate classification of Ms. Loeb's family members' accounts with PJL (the "Family Accounts") as "direct" claimants—thereby denying them indirect-victim equalization—constitute arbitrary and capricious action under the Administrative Procedure Act.

---

[1] Although the 2026 SIPA payment has not yet come through, Plaintiffs anticipate that if and when it does, it will add approximately 1.302% to each of Plaintiffs accounts. This would essentially bring the shortfall amount to approximately $3.4 million—which reflects a recovery that is still substantially lower than other similarly situated victims who have been brought to the MVF's 93.71% equalization level. Since that payment has not yet materialized, Plaintiffs will use the currently applicable $3.7 million figure herein.

7. Accordingly, Plaintiffs seek judicial review, a declaration that Defendants' determinations and refusal to issue equalization payments to Plaintiffs are arbitrary and capricious, appropriate injunctive relief directing Defendants to issue Plaintiffs the required equalization payments, and if necessary (as set forth in the corresponding Motion for Preliminary Injunction filed herewith) injunctive relief preventing the premature closure or dissolution of MVF in a manner that would irreparably prejudice Plaintiffs' ability to obtain full and equal treatment.

## THE PARTIES

8. Plaintiff PJL Investments LLC is a family LLC organized under the laws of New York.

9. Plaintiff Jeanette Loeb is the managing member of PJL, and is an approved MVF petitioner with multiple associated Claim IDs in connection with PJL's various accounts—each with its own tax identification number ("EIN") and particular parity deficit in this matter—including her personal account (7001670), her IRA account (7001894), and her family members accounts (8038313, 8038315, 8038308, 8038312, 8038310, 8038311, and 8038314) (collectively, the "PJL Accounts"). Ms. Loeb resides in New York, New York.

10. Defendant Richard C. Breeden is the Special Master appointed by the DOJ to administer the MVF. Mr. Breeden resides in Greenwich, Connecticut.

11. Defendant Madoff Victim Fund is a DOJ-administered remission fund charged with compensating victims of the Madoff fraud. The MVF is primarily operated through its administrative headquarters in East Syracuse, New York.

12. Defendant Department of Justice is the federal agency that oversees the MVF and makes final eligibility decisions for remission based on the Special Master's recommendations. The DOJ is headquartered in Washington, D.C.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Administrative Procedure Act and seeks judicial review of final agency action by DOJ and those acting under its direction.

14. The Court has personal jurisdiction over each of the Defendants because each of the Defendants have established minimum contacts with New York. The MVF has been actively involved in processing claims and distributing funds to victims within New York, where a significant number of claimants, including Jeanette Loeb, reside. The Special Master, Richard C. Breeden, operates in New York, overseeing the administration of the MVF and making determinations that directly impact New York residents. Additionally, DOJ's policies and decisions regarding the MVF have been implemented and enforced in New York, further demonstrating Defendants' purposeful availment of conducting activities within the state.

15. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Plaintiff resides in this District.

## RELEVANT FACTS

16. DOJ formed the MVF in 2013 to administer payments to victims of the Madoff fraud under U.S. forfeiture laws. Because victims can also obtain recovery through private actions, MVF stated that it would account for private recoveries by paying the amount necessary to reach MVF's recovery percentage after accounting for "collateral recoveries," including both actual and "reasonably available" recoveries from other sources.[2]

---

[2] Madoff Victim Fund, http://madoffvictimfund.com.

4

17. The MVF is independent of the bankruptcy proceedings and is governed by, among other laws, 28 C.F.R. Part 9.

18. Ms. Loeb and PJL maintained direct investment accounts with Bernard L. Madoff Investment Securities LLC, and suffered catastrophic losses due to the Madoff Ponzi Scheme.

19. After the establishment of the MVF, Plaintiffs filed an initial claim for PJL itself. The MVF rejected that application. Based on its "look-through" requirement, it directed Plaintiffs to reapply for PJL's individuals accounts.

20. The "look-through" requirement effectively treated each of the PJL members exclusively as direct investors by excluding them from MVF payments available to indirect investors. This approach departed from the treatment of nearly 40,000 individuals who had invested through funds. Those victims recovered **both** through the MVF as indirect investors and received MBE distributions obtained by the funds through the bankruptcy and Securities Investor Protection Act ("SIPA") process described *infra*.[3]

21. On June 21, 2017, all of Plaintiffs' claims were accepted.

22. Since then, Plaintiffs have navigated a complex landscape of claims and communications related to their Madoff investments. Moreover, notwithstanding the fact that MVF accepted their claims, none of Plaintiffs' claims have received any distributions from MVF.

23. As direct investors, Ms. Loeb and PJL were also claimants in the Bernard L. Madoff Investment Securities LLC ("BLMIS") liquidation proceeding administered by the SIPA Trustee,

---

[3] *See* Madoff Victim Fund, https://madoffvictimfund.com/ (reporting that 38,860 petitioners obtained recovery through the MVF in addition to what they received as direct payments: "Other sources of compensation, including recoveries trickling down through the Madoff and feeder fund bankruptcies, delivered a 34.6% recovery to these people. MVF then paid $2.8 billion to bring them all to a 93.71% recovery").

Irving Picard, and overseen by the Securities Investor Protection Corporation ("SIPC"). The SIPA Trustee has no jurisdictional authority over MVF distributions.

24. After Plaintiffs' claims against the BLMIS estate were allowed by the Trustee, Plaintiffs periodically received distributions from the SIPA Trustee's litigation victories and clawbacks.

25. As depicted in this chart, however, recovery payments from the SIPA proceedings have slowed to a crawl, particularly after Defendants' 2022 decision to cut off SIPA-eligible victims (shown in italics). That fact was foreseeable at the time. The Madoff Ponzi scheme collapsed in 2008, and by 2022, the SIPA process had long ago harvested all of the low-hanging fruit. Indeed, the last recovery above 5% was back in 2015; payments had fallen into the 1% range for the two years preceding DOJ's decision to permanently exclude Plaintiffs' claims from the MVF process, and have fallen lower in most years since then.

| Date | Percentage of Recovery |
|---|---|
| 10/15/11 | 4.602% |
| 9/19/12 | 33.556% |
| 3/29/13 | 4.721% |
| 5/5/14 | 3.180% |
| 2/6/15 | 2.743% |
| 12/4/15 | 8.262% |
| 6/30/16 | 1.305% |
| 2/2/17 | 1.729% |
| 2/22/18 | 3.806% |
| 2/22/19 | 2.729% |
| 2/28/20 | 1.975% |
| 2/26/21 | 1.240% |
| 2/25/22 | 0.604% |
| *2/24/23* | *0.265%* |

| Date | Percentage of Recovery |
|---|---|
| 2/23/24 | 0.419% |
| 2/28/25 | 0.410% |
| Pending Feb 2026 | 1.302% (anticipated) |

26. Throughout this period, Plaintiffs have reported all of their SIPA distributions to the MVF.

27. Consistent with MVF's stated equalization design, MVF required all petitioners to update their actual collateral recoveries before each distribution cycle, as reflected in MVF's claimant communications and website materials directing claimants to report realized SIPA/MBE recoveries so MVF could true-up payments to the applicable parity percentage. This operational practice confirms that the correct methodology is to measure actual, realized recoveries against the prevailing MVF parity level and then pay the shortfall, rather than projecting future recoveries to preemptively cut off payments.

28. In June 2021, MVF informed Ms. Loeb via email that DOJ had placed a hold on what it deemed "direct" Madoff investors' MVF payouts. Among those were all of Plaintiffs' claims, including those of the non-managing PJL members, even though they did not directly hold claims in the bankruptcy. MVF further stated that certain of Plaintiffs' accounts had recovered more than MVF's then-current recovery percentage of 80.5% and thus were not included in that distribution cycle.

29. Defendants demonstrated actual knowledge of Plaintiffs' specific recovery levels by this email.

30. MVF advised that DOJ required deduction of all collateral recoveries already received or to be received in the future, and that MVF could not include Ms. Loeb's direct-investor claim (7001670) until the total MBE recovery was known. Moreover, MVF declared that PJL's

7

indirect IRA and family accounts were ineligible for further distribution at that time because Plaintiffs' SIPA recoveries were greater than the then-established MVF percentage of 80.05%. At the time, Plaintiffs had no reason to object to this hold because it was purportedly necessary to assure that all victims would receive the same recovery levels.

31. Upon regular outreach to the MVF help desk, MVF personnel repeatedly informed Plaintiffs that they would get equalized—but they did not know when.

32. In September 2022, rather than performing individualized calculations as the parity target rose above 80.5%, Defendants apparently issued a generic form letter to Plaintiffs' accounts.

33. These letters ignored the fact that Plaintiffs' accounts were no longer above parity and that the shortfall was expanding.

34. With these letters, the MVF issued determinations to Plaintiffs' accounts that petitioners with allowed MBE claims would not receive MVF payments because DOJ projected that their reasonably available MBE recoveries would likely meet or exceed MVF's payout level.

35. By contrast, indirect victims who had collected recovery payments from MVF were permitted to collect additional recoveries that their funds obtained in the SIPA and/or MBE process. MVF therefore did not account for future potential recovery that these victims could obtain outside of the MVF process or treat those potential payments as a reason to stop paying them in the MVF process.

36. Despite the fact that these letters referenced in Paragraph 32 *supra* were allegedly drafted in 2022, Ms. Loeb did not receive those notices until 2024. The letters were forwarded to Plaintiffs after Ms. Loeb followed up with MVF on March 5, 2024, regarding the status of recovery payments for their accounts.

37. Notably, in December 2023, the Special Master committed to "reconciling every claim involving uncertainties during 2024."[4] Since then, however, Defendants have failed to perform such reconciliation for Plaintiffs, despite possessing recovery data for the accounts.

38. On April 4, 2024, Ms. Loeb sent a letter to Special Master Breeden contending that MVF-approved SIPA claimants were being discriminated against, noting MVF claimants had at that time received over 90%, while SIPA claimants remained at only slightly more than 70% in terms of their SIPA distributions. That 2024 letter even offered to subrogate any MVF recoveries Plaintiffs were allocated, to allay potential concerns with double-dipping.

39. Ms. Loeb continued raising such concerns through 2024 and 2025, but her complaints fell on deaf ears. More conversations with the MVF help desk that went nowhere.

40. On December 28, 2025, Ms. Loeb filed a Formal Grievance with the DOJ, challenging the continued application of the 2022 halt to payments to her and her family's accounts. She raised two points: (1) DOJ's projection regarding future SIPA recoveries had proven inaccurate, making continued reliance on it improper; and (2) the continued disparate treatment of LLC members vis-à-vis indirect investors in other structures, including feeder funds, was indefensible. Ms. Loeb requested revised determinations to reflect that the MBE had not reached the 93.71% threshold that the MVF had paid. Her filing included a summary of claim shortfalls, including a $3,192,419 shortfall for Claim 7001670 alone.

41. In January 2026, Ms. Loeb attempted to engage further with the MVF to escalate Plaintiffs' grievances. She issued a demand for final determinations, administrative records, and a stay of closure, seeking action within 14 days. She followed up to identify the responsible

---

[4] MVF Commences Distribution 9: December 2023 Update, Madoff Victim Fund, https://madoffvictimfund.com/case-update-from-the-special-master-december-2023/.

DOJ/MVF handler and documented a total shortfall across Plaintiffs' claims of $3,727,435.91 relative to what Plaintiffs would have received if they had been treated equally to MVF claimants.

42. The following table illustrates how Defendants' arbitrary and unlawful continuation of a "wait and see" policy has failed. While the MVF target recovery has continued to rise, the SIPA recoveries have fallen behind:

| Account Type | Plaintiffs' 2021 Recovery | 2021 MVF Recovery (80.5%) | Plaintiffs' 2026 Recovery[5] | 2026 MVF Recovery (93.71%) |
|---|---|---|---|---|
| Personal | 73.92% | 6.58% Below | 75.62% | **18.09% BELOW** |
| Family Accounts | 81.90% | Above Target | 83.65% | **10.06% BELOW** |
| IRA Account | 90.79% | Above Target | 92.49% | 1.22% (Near Parity) |

43. As of the date of this Complaint, Defendants have still not reasonably addressed Plaintiffs' concerns. Plaintiffs have not received revised determinations reflecting the MVF's 93.71% recovery level or the full administrative records for their claims. Nor have they received the true-up payments that equalize their recovery to that of other victims.

44. Notably, other MVF victims who have been brought to the 93.71% equalization level remain eligible for additional payments through SIPA distributions and feeder fund bankruptcy litigation. These continuing payments have the potential to increase their total recovery to 100%, underscoring the disparity in treatment between these victims and Plaintiffs, who have been precluded from reaching even the MVF parity level due to Defendants' reliance on speculative future recoveries

---

[5] If the anticipated 2026 SIPA materializes and adds approximately 1.302% to each of Plaintiffs accounts, this would essentially bring the IRA to parity, and would bring Ms. Loeb's personal account's recovery to 76.922% and the PJL Family Accounts to 84.952%—still substantially lower than other similarly situated victims who have been brought to the MVF's 93.71% equalization level.

45. Plaintiffs' claims (and exhaustion thereof) are further supported by the DOJ's remission regulations governing the MVF's victim process and pro rata distribution framework in 28 C.F.R. Part 9. In particular, 28 C.F.R. § 9.8 requires that eligible victims be treated equitably through a uniform remission process and that distributions be made on a pro rata basis so that similarly situated victims are equalized to a common recovery level after accounting for collateral recoveries.

46. Defendants' exclusion of Plaintiffs from equalization payments based on a prediction of "reasonably available" future recoveries, while allowing similarly situated indirect victims to receive MVF payments without offset for their future potential recoveries, is inconsistent with a uniform pro rata equalization process and has resulted in Plaintiffs remaining materially below the MVF's equalization level.

47. To the extent that any exhaustion requirement applies, Plaintiffs have pursued and exhausted the MVF's victim process by, among other things, submitting formal grievances and demands for final determinations and the administrative record—to which they have received no response, thereby satisfying any exhaustion requirement before seeking judicial review. Moreover, further administrative pursuit would be futile absent Court intervention.

48. In its December 2024 announcement, the DOJ described the tenth distribution as the "tenth and final distribution," stating it "achieves the department's goal of compensating victims by returning over $4 billion in forfeited assets to more than 40,000 victims of Madoff's crimes and achieving nearly full recovery for these victims."[6] The MVF likewise declared in

---

[6] U.S. Department of Justice, Justice Department's Tenth Distribution Provides Over $4 Billion In Nearly Full Recovery To Over 40,000 Victims In Madoff Ponzi Scheme (Dec. 30, 2024), https://www.justice.gov/usao-sdny/pr/justice-departments-tenth-distribution-provides-over-4-billion-nearly-full-recovery.

11

December 2024 that "[i]n 2025, eight years after our first distribution, MVF will complete its work."[7]

49.  More than a year has passed, and it is now well beyond the period in which MVF confirmed it was "complet[ing] its work." Further, on a call with Plaintiffs' counsel on February 23, 2026, the DOJ indicated that the MVF would be closing down this year. Accordingly, the MVF is now living on borrowed time, and could cease operations any day, without a moment's notice.

50.  In light of Defendants' representations that the MVF will be closing down and ceasing recovery payments this year, Plaintiffs need the Court's prompt intervention.

## FIRST CLAIM FOR RELIEF
### (Violation of the Administrative Procedure Act)

51.  Plaintiffs incorporate and reallege the allegations set forth above as though fully set forth herein.

52.  This count is brought against Defendants for violations of the Administrative Procedure Act, 5 U.S.C. § 701 et seq., arising from the arbitrary and capricious treatment of Plaintiffs' approved claims.

53.  The APA requires that agency actions be set aside if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

54.  The APA mandates that agencies provide a reasoned explanation for their decisions, considering all relevant factors and articulating a rational connection between the facts found and the choices made. The APA requires that the reimbursement policies at issue in this case be reasonable not only at the time of their adoption but also at all future dates when they are applied.

---

[7] Madoff Victim Fund, MVF Commences Distribution 10: December 2024 Update (Dec. 30, 2024), https://www.madoffvictimfund.com.

12

55. Defendants, through the MVF and under the direction of the DOJ, issued determination letters in 2022 excluding Plaintiffs' claims from equalization payments.

56. Defendants relied on outdated and speculative "reasonably available recovery" projections from the MBE to justify withholding payments through the present day, despite Plaintiffs' accounts being materially below the MVF's current equalization level of 93.71%.

57. Despite Defendants' reliance on projected recoveries from the MBE, these projections have not materialized over the intervening years. As a result, Plaintiffs' accounts lag significantly behind the MVF's equalization level, with a very real likelihood of never reaching the 93.71% recovery percentage due to the impending closure of the MVF and the risk of no (or woefully inadequate) future MBE recovery payments.

58. Defendants' reliance on speculative future recoveries, without considering Plaintiffs' actual recovery status, constitutes arbitrary and capricious decisionmaking.

59. Defendants also failed to provide a sufficient reasoned basis for treating Plaintiffs' so-called "direct" claims differently from indirect claimants who received equalization payments.

60. Defendants arbitrarily classified the accounts of PJL members other than Ms. Loeb herself as direct claims, despite the fact that they fall squarely within Defendants' definition of indirect victims. This resulted in unequal treatment and exclusion from equalization payments, lacking a rational basis and failing to apply consistent standards across all indirect claims.

61. Defendants ignored relevant factors, including the economic harm to Plaintiffs and the disparity in recovery levels between direct and indirect claimants, and the similarity between the Family Accounts' claims and other indirect victims' claims.

62. Defendants have not adhered to the MVF's stated objective of equalizing victims' recoveries, resulting in lower recovery for Plaintiffs.

63. As a direct result of Defendants' arbitrary and capricious actions, Plaintiffs have suffered significant financial harms, remaining substantially below the MVF's final payout level achieved by similarly situated indirect claimants.

64. Injunctive relief is required to compel Defendants to make Plaintiffs whole by bringing their recoveries to the MVF equalization level. Such an order would ensure Plaintiffs receive the same treatment as other victims, consistent with the MVF's stated objective of equalizing recoveries.

65. In connection with a Motion for Temporary Restraining Order and Preliminary Injunction that will be filed contemporaneously with the instant Complaint, Plaintiffs seek injunctive relief to prevent Defendants from transferring or dissipating assets that are necessary to satisfy Plaintiffs' claims. This relief is warranted to maintain the status quo and ensure that funds remain available to bring Plaintiffs to the MVF's equalization level.

66. Plaintiffs further request the establishment of a constructive trust over the MVF's remaining assets to preserve funds during the pendency of this litigation. A constructive trust is appropriate to satisfy the demands of justice, and to ensure that assets in MVF's possession are maintained during the pendency of this litigation and not swept into the Treasury.

## SECOND CLAIM FOR RELIEF
**(Declaratory Judgment)**

67. Plaintiffs incorporate and reallege the allegations set forth above as though fully set forth herein.

68. This count is brought in light of Defendants violations of the APA, 5 U.S.C. § 701 *et seq.*, arising from the arbitrary and capricious treatment of Plaintiffs' approved claims.

69. Plaintiffs seek a declaratory judgment that Defendants' denial of equalization payments based on speculative future recoveries violates the pro rata distribution requirement

under 28 C.F.R. Part 9, and is arbitrary and capricious under the APA; that Defendants' reliance on generic form letters without individualized determinations is arbitrary and capricious under the APA; and that Defendants' actions have left Plaintiffs materially below the MVF's equalization level, contrary to the MVF's stated objective of equalizing victims' recoveries, and in violation of the APA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

A. Plaintiffs seek a declaration that Defendants' actions were arbitrary, capricious, and in violation of the APA.

B. Plaintiffs request an injunction ordering Defendants to make the necessary equalization payments to bring Plaintiffs' accounts to the established 93.71% level.

C. Plaintiffs request injunctive relief, including but not limited to the establishment of a constructive trust, to set aside and preserve MVF funds sufficient to make Plaintiffs whole during the pendency of this litigation.

D. Plaintiffs seek any other relief the Court deems just and proper, including interest and attorneys' fees and costs.

**Dated**:        March 4, 2026

GREENBERG TRAURIG, LLP

BY:/S/_____
   Daniel P. Filor
   One Vanderbilt Avenue, 31st Fl
   New York, New York 10017
   212 801-9350
   filord@gtlaw.com

                                        **GREENBERG TRAURIG, LLP**
                                        Dominic Draye
                                        (Pro Hac Vice- to be submitted)
                                        2375 East Camelback Road, Suite 800
                                        Phonexi, AZ 85016
                                        1 602 445-8000
                                        drayed@gtlaw.com

                                        **GREENBERG TRAURIG, LLP**
                                        Nick Petersen
                                        (Pro Hac Vice- to be submitted)
                                        222 South Main Street, Suite 1730
                                        Salt Lake City, Utah 84101
                                        1 801 478-6900
                                        Nick.Peterson@gtlaw.com

*Attorneys for Plaintiffs PJL Investments LLC and PJL manager Jeanette Loeb*